UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, | ) ) ) | | |
| Plaintiff, | ) ) | | |
| v. | ) ) | No. | 3:08-CV-178 (VARLAN/SHIRLEY) |
| FRAZIER'S FLOORING, INC., | ) ) | | |
| Defendant. | ) | | |

## MEMORANDUM AND ORDER

This civil action is before the Court on Defendant's Motion for Summary Judgment [Doc. 13], and Plaintiff's Motion for Summary Judgment [Doc. 15]. Both parties to this action seek a declaratory judgment in their favor. Plaintiff filed a response in opposition to defendant's motion [Doc. 17], defendant filed a reply [Doc. 18], and with leave of Court, plaintiff filed a sur-reply [Doc. 22]. Additionally, defendant filed a response in opposition to plaintiff's motion [Doc. 19]. Because the Court finds that it is appropriate for the Court to decline to exercise jurisdiction over this action for a declaratory judgment, the Court will remand this case to the Circuit Court for Knox County, Tennessee.

**I.     Relevant Facts**

Plaintiff, State Automobile Mutual Insurance Company ("State Auto"), and defendant, Frazier's Flooring, Inc. ("Frazier's Flooring"), were parties to an insurance contract issued by State Auto. The policy was in effect from October 1, 2006 through October 1, 2007. During that period of time, Frazier's Flooring contracted with Teresa Powers to install floor

coverings in Mr. and Mrs. Powers's home. After the tile flooring was installed, the Powerses began noticing problems with the grout between the tiles. The Powerses discussed several options for fixing the problems with Frazier's Flooring, and ultimately decided that Frazier's Flooring would redo the entire job, which required removing the existing grout and tile. To remove the grout and tile, Frazier's Flooring's subcontractor used a grinder, saw, and/or other abrasive devices, which allegedly caused carcinogenic dust to be dispersed throughout Powerses' house.

As a result, the Powerses filed claims for personal injury and property damage against Frazier's Flooring in the Circuit Court for Knox County, Tennessee. Frazier's Flooring notified State Auto of the claims and sought coverage pursuant to the insurance policy. State Auto filed this declaratory judgment action in the Chancery Court for Knox County, Tennessee, alleging that the grout dust meets the definition of a pollutant, and therefore, State Auto does not have a duty to defend or indemnify Frazier's Flooring for the Powerses' claims because the policy excludes coverage related to the dispersal of pollutants. Frazier's Flooring removed the declaratory judgment action to this Court.

## II. Analysis

The Court must first determine if it is appropriate to exercise jurisdiction over this declaratory judgment action. Because the Court concludes that it is not, it will not render a decision on the merits of parties' motions for summary judgment.

### A. Declaratory Judgment Action

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. This Act confers jurisdiction, but it does not compel it. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942); *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Accordingly, even when all other jurisdictional requirements have been met, a district court is not required to exercise jurisdiction and may dismiss a declaratory judgment action. *See Wilton*, 515 U.S. at 287-88.

The Sixth Circuit has established a five-part test to aid a district court in determining whether it should exercise jurisdiction over a declaratory action:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (citation omitted). The Court will consider each factor in turn.

3

Case 3:08-cv-00178-TAV-CCS   Document 27   Filed 03/13/09   Page 3 of 14   PageID #: 354

1. **The First Two Factors: Whether The Judgment Would Settle The Controversy or Clarify the Legal Relations at Issue?**

As these two factors are related, the Court will consider them together. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d at 557. There are two lines of cases when it comes to consideration of each of these factors within the Sixth Circuit.

In regard to the first factor, one line of cases suggests that the declaratory judgment action need only resolve the controversy before the district court for this factor to weigh in favor of jurisdiction, while the other line of cases suggests that the declaratory judgment action must settle the ultimate controversy in state court for this factor to weigh in favor of jurisdiction. *Compare Scottsdale Ins. Co.*, 513 F.3d at 555-56; *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n. 1 (6th Cir.1986), *with Travelers Indem. Co. v. Bowling Green Prof'l Assoc.*, 495 F.3d 266, 272 (6th Cir. 2007); *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 Fed. App'x 562, 564-65 (6th Cir. 2006); *Bituminous Cas. Corp. v. J&L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004); *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984).

In at least two recent Sixth Circuit cases in which the parties sought to clarify the obligations of an insurance company to defend and/or indemnify the insured in an underlying state action where the insurance company was not a party to the state court action and there were parties in the state court action that were not before the district court, the district court

4

concluded that the declaratory judgment action could settle the controversy. *Scottsdale Ins. Co.*, 513 F.3d at 557; *Travelers Indem. Co.*, 495 F.3d at 272. The Sixth Circuit reversed the holding in one of the cases finding that the district court's decision would not settle the underlying controversy in state court, *see Travelers Indemnity Co.*, 495 F.3d at 272, and affirmed it in another, stating that settling the immediate controversy was enough to satisfy this factor, *see Scottsdale Ins. Co.*, 513 F.3d at 556.

In regard to the second factor, there is a similar split. One line of cases suggests that the district court's decision need only to clarify the legal relations presented in the declaratory judgment action for this factor to weigh in favor of exercising jurisdiction, while the other suggests it must also clarify the legal relations in the underlying state action. *Compare Scottsdale Ins. Co.*, 513 F.3d at 557, *with Travelers Indem. Co.*, 495 F.3d at 272; *Bituminous Cas. Corp.*, 373 F.3d at 814.

In trying to reconcile the two lines of cases, one district court found that the historical background of the factors indicates that the first two factors are meant to address distinct issues. *See Grange Mut. Cas. Co. v. Safeco Ins. Co.*, 565 F. Supp. 2d 779, 788 (E.D. Ky. 2008). The *Grange Mutual Casualty Co.* court determined that history shows that the first factor is meant to address whether the declaratory judgment action will settle the ultimate controversy while the second factor is meant to address the usefulness of the action in clarifying the discrete legal relations at issue within the declaratory judgment action. *Id.* The Court agrees that this is the appropriate application of the first two factors, and will apply it to this case.

5

The declaratory action now before the Court will only determine if State Auto has a duty to defend, and if necessary, indemnify Frazier's Flooring in the action between David and Teresa Powers and Frazier's Flooring Inc. now pending in the Circuit Court for Knox County, Tennessee. It will not resolve the ultimate controversy or help clarify the legal relations between Mr. and Mrs. Powers and Frazier's Flooring. Therefore, the first factor weighs against exercising jurisdiction and the second factor weighs in favor of exercising jurisdiction.

### 2. The Third Factor: Whether The Declaratory Remedy Is Being Used Merely For The Purpose Of Procedural Fencing Or To Provide An Arena For A Race For Res Judicata?

The Sixth Circuit disfavors declaratory actions when they "could frustrate a plaintiff's choice of forum and encourage forum shopping, races to the courthouse, needless litigation occasioning waste of judicial resources, delay in the resolution of controversies, and misuse of the judicial process to harass an opponent in litigation." *NGS Am., Inc. V. Jefferson*, 218 F.3d 519, 523 (6th Cir. 2000). However, the Court should not "impute an improper motive . . . where there is no evidence of such in the record." *Scottsdale Ins. Co.*, 513 F.3d at 558. In *Scottsdale*, the Sixth Circuit found that an insurance company that filed a declaratory injunction action was not in a race to judgment when it was not a party to the state court action, and thus, the issue of its coverage was not before the state court. *Id.*

Here, there is certainly no evidence of an improper motive regarding forum shopping or a race to judgment. As was the case in *Scottsdale*, State Auto is not a party to the state

6

The declaratory action now before the Court will only determine if State Auto has a duty to defend, and if necessary, indemnify Frazier's Flooring in the action between David and Teresa Powers and Frazier's Flooring Inc. now pending in the Circuit Court for Knox County, Tennessee. It will not resolve the ultimate controversy or help clarify the legal relations between Mr. and Mrs. Powers and Frazier's Flooring. Therefore, the first factor weighs against exercising jurisdiction and the second factor weighs in favor of exercising jurisdiction.

### 2. The Third Factor: Whether The Declaratory Remedy Is Being Used Merely For The Purpose Of Procedural Fencing Or To Provide An Arena For A Race For Res Judicata?

The Sixth Circuit disfavors declaratory actions when they "could frustrate a plaintiff's choice of forum and encourage forum shopping, races to the courthouse, needless litigation occasioning waste of judicial resources, delay in the resolution of controversies, and misuse of the judicial process to harass an opponent in litigation." *NGS Am., Inc. V. Jefferson*, 218 F.3d 519, 523 (6th Cir. 2000). However, the Court should not "impute an improper motive . . . where there is no evidence of such in the record." *Scottsdale Ins. Co.*, 513 F.3d at 558. In *Scottsdale*, the Sixth Circuit found that an insurance company that filed a declaratory injunction action was not in a race to judgment when it was not a party to the state court action, and thus, the issue of its coverage was not before the state court. *Id.*

Here, there is certainly no evidence of an improper motive regarding forum shopping or a race to judgment. As was the case in *Scottsdale*, State Auto is not a party to the state

court action, and, thus, the issue of whether it must defend or indemnify Frazier's Flooring is not before the state court. Accordingly, this factor weighs in favor of jurisdiction.

### 3. The Fourth Factor: Whether Allowing the Action Would Cause Friction Between State and Federal Courts?

There are three sub-factors the Court must consider to determine whether the exercise of jurisdiction would increase friction between federal and state courts:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co.*, 513 F.3d at 560; *Bituminous Cas. Corp.*, 373 F.3d at 814-15.

The first sub-factor requires to the Court to determine if there is an overlap between the factual findings that must be reached by the district court in the resolution of the issues raised in the declaratory judgment action and the factual findings that must reached in resolving the underlying issues in state court. *See Scottsdale Ins. Co.*, 513 F.3d at 560; *Travelers Indem. Co.*, 495 F.3d at 272. If there are common factual findings required, the federal and state courts could reach conflicting conclusions, and, thus, the exercise of jurisdiction would be inappropriate. *Scottsdale Ins. Co.*, 513 F.3d at 560; *Travelers Indem. Corp.*, 495 F.3d at 272. There is no such concern here because there are no facts in dispute

in regard to the resolution of the declaratory action. Thus, this sub-factor weigh in favor of exercising jurisdiction.

In considering the second sub-factor, the Court looks at whether the federal or state court is in a better position to resolve the issues in the declaratory action. *See Scottsdale Ins. Co.*, 513 F.3d at 560. If the resolution of the declaratory action requires the court to resolve an undecided issue of state law, the state court is in a better position to resolve the issues. *Id.*; *Travelers Indem. Co.*, 495 F.3d at 272; *Bituminous Cas. Corp.*, 373 F.3d at 815-16 (noting that because there were unresolved questions of state law concerning state regulated insurance contracts, this factor weighed against exercising jurisdiction); *Omaha Prop. & Cas. Ins. Co.*, 923 F.2d at 448. As the Court discusses in detail below, there is an unresolved issue of state law which much be determined for the Court to make a determination about the insurance coverage and thus, this sub-factor weighs strongly against jurisdiction.

The Court's consideration of the third sub-factor is similar to that of the second sub-factor in that the Court must determine "whether the issue in the federal action implicates important state policies, and is, thus, more appropriately considered in state court." *Scottsdale Ins. Co.*, 513 F.3d at 561. In regard to insurance contract interpretation, state courts are generally considered the better forum because, "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Bituminous Cas. Corp.*, 373 F.3d at 815. Thus, this sub-factor weighs strongly against exercising jurisdiction.

8

After considering all of the sub-factors together, the Court determines that exercising jurisdiction over the declaratory judgment action would create friction between federal and state courts. Accordingly, this factor weighs against jurisdiction.

### 4. The Fifth Factor: Whether There Is An Alternative Remedy That Is Better Or More Effective?

The district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984). Tennessee law provides that, "Courts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tenn. Code Ann. § 29-14-102. Thus, there is an alternative remedy in this case because a declaratory judgment could be obtained in Tennessee state court.

As noted previously, "[State] courts are in a superior position to resolve undecided questions of state law." *Scottsdale Ins. Co.*, 513 F.3d at 562. As the Court discusses in detail below, there is an unresolved issue of state law which much be determined for the Court to make a determination about the insurance coverage. Accordingly, because an alternative remedy does exist in this case and it is a better method of resolving the parties' dispute, this factor weighs strongly against jurisdiction.

### B. Unresolved Issue of State Law

The material issue in this declaratory judgment action is whether State Auto has a duty to defend and/or indemnify Frazier's Flooring for any damages claimed by the Powerses. This requires the Court to interpret the insurance contract between State Auto and Frazier's

9

Flooring to determine if the dust dissemination through the Powerses' home is covered by the contract.

The dispute between the parties is over whether the pollution exclusion set forth in the Commercial General Liability Coverage portion of the policy, Form CG 00 001 12 04, page 3, Exclusion f, excludes from coverage the dissemination of grout dust throughout the Powerses' home. The pollution exclusion provides that the policy does not cover:

> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
> \*\*\*
>
> (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:
>
> \*\*\*
>
> (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by [the insured] or on [the insured's] behalf by a contractor or subcontractor.

[Doc. 5-1 at 72.] The policy goes on to state,

> "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

[*Id.* at 83.] This type pollution exclusion is common in the insurance industry, and whether it is interpreted to apply to any kind of pollution or only traditional environment pollution

10

depends upon which state's law is applied. Though many states have interpreted clauses nearly identical to the one here, Tennessee has not.

Of the states which have interpreted the pollution exclusion clause, approximately half of them have determined that the clause is only meant to exclude coverage for traditional environmental pollution.[1] The remaining states have determined that the language of the clause excludes from coverage all forms of pollution.[2] Defendant argues that the Court should apply the former interpretation and find that the dust dissemination throughout the Powerses' home is not excluded from coverage under the policy because it is not a form of

---

[1] *CBL & Assoc. Mgmt, Inc. v. Lumbermens Mut. Cas. Co.*, 2006 WL 2087625, at *8 (E.D. Tenn. 2006) (citing *U.S. Fire Ins. Co. v. City of Warren*, 87 Fed. App'x 485, 490 (6th Cir. 2003) (Michigan law); *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1004-06 (4th Cir. 1998) (Maryland law); *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900-02 (3d Cir. 1997) (Pennsylvania law); *Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co.*, 112 F.3d 184, 188 (5th Cir. 1997) (Texas law); *Am. States Ins. Co. v. Nethery*, 79 F.3d 473, 477 (5th Cir. 1996) (Mississippi law); *Longaberger Co. v. U.S. Fidelity & Guar. Co.*, 31 F. Supp. 2d 595, 603-04 (S.D. Ohio 1998) (Ohio law); *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135, 1138 (Fla. 1998); *Auto-Owners Ins. Co. v. Hanson*, 588 N.W.2d 777, 779-81 (Minn. Ct. App. 1999); *Cook v. Evanson*, 920 P.2d 1223, 1226 (Wash. Ct. App. 1996); *Peace v. Nw. Nat'l Ins. Co.*, 596 N.W.2d 429 (Wis. 1999)).

[2] *CBL*, 2006 WL 2087625, at *7 (citing *Nautilus Ins. Co. v. Jabar*, 188 F.3d 27, 30-31 (1st Cir. 1999) (Maine law); *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 530-31 (9th Cir. 1997) (Montana law); *Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.*, 47 F/3d 34, 38 (2d Cir. 1995) (New York law); *Reg'l Bank of Colo., N.A. v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494, 498 (10th Cir. 1994) (Colorado law); *Lumbermens Mut. Cas. Co. v. S-W Indus., Inc.*, 23 F.3d 970, 981-82 (6th Cir. 1994) (Ohio law); *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043-44 (7th Cir. 1992) (Illinois law); *C.H. Heist Caribe Corp. v. Am. Home Assurance Co.*, 640 F.2d 479, 482-83 (3d Cir. 1981) (Virgin Islands law); *Westchester Fire Ins. Co. v. City of Pittsburg*, 794 F. Supp. 353, 355 (D. Kan. 1992) (Kansas law); *Minerva Enters., Inc. v. Bituminous Cas. Corp.*, 851 S.W.2d 403, 404 (Ark. 1993); *MacKinnon v. Truck Ins. Exch.*, 71 P.3d 1205, 1216-17 (Cal. 2003); *Am. States. Ins. Co. v. Koloms*, 687 N.E.2d 72, 79 (Ill. 1997); *Thompson v. Temple*, 580 So.2d 1133, 1135 (La. Ct. App. 1991); *Western Alliance Ins. Co. v. Gill*, 686 N.E.2d 997, 999 (Mass. 1997); *West Am. Ins. Co. v. Tufco Flooring E., Inc.*, 409 S.E.2d 692, 699-700 (N.C. Ct. App. 1991)).

11

traditional environmental pollution, and therefore, plaintiff has a duty to defend or indemnify defendant. Plaintiff argues that the Court should apply the latter interpretation and find that the dust dissemination is excluded from coverage because the pollution exclusion applies to all forms of pollution.

In the only case in which a Tennessee court has considered the pollution exclusion clause, the Tennessee Court of Appeals recognized the two distinct views on the scope of the exclusion but ultimately left the issue unsettled stating, "[T]he facts of the case are such that we do not need to decide with which side Tennessee should be aligned." *Sulphuric Acid Trading v. Greenwich Ins.*, 211 S.W.3d 243, 253 (Tenn. Ct. App. 2006). Accordingly, this is an unresolved issue of law in Tennessee.

Though there are two federal courts that have considered the interpretation of pollution exclusion clauses under Tennessee law, they are of little help to the Court here. Both cases, after stating that the issue is unsettled in Tennessee, apply the standard rules of contract interpretation under Tennessee law but, nevertheless, they reach opposite conclusions. *See CBL & Assoc. Mgmt, Inc. v. Lumbermens Mut. Cas. Co.*, 2006 WL 2087625 (E.D. Tenn. 2006) ; *In re Idleaire Tech. Corp.*, 2009 WL 413117 (Bankr. D. Del. Feb. 18, 2009).

In *CBL*, Judge Mattice of the Eastern District of Tennessee determined that the plain, ordinary meaning of the terms used in the pollution exclusion was clear and they should not be treated as technical terms of art. 2006 WL 2087625, at *7-8. Thus, he concludes that, "Tennessee courts, if faced with this issue, would adopt the reasoning of the second line of

12

cases and would conclude that the pollution exclusion applies to all types of pollution . . . and not just to traditional environmental pollutants." *Id.* at *8. Accordingly, Judge Mattice found that the insurance companies had no duty to defend the insured. *Id.* at *9.

In *Idleaire*, Judge Gross of the United States Bankruptcy Court for the District of Delaware determined that, under Tennessee law, the pollution exclusion is latently ambiguous because a strict reading excluding all pollution from coverage would produce an absurd result. 2009 WL 413117, at *9. Accordingly, he determined that it should be construed in favor of the insured and, therefore, only excludes traditional environmental pollution from coverage. *Id.* Thus, he resolved the declaratory judgment action in favor of the insured stating that "the circumstances are too far removed from the common understanding of pollution" to be excluded. *Id.*

This issue is clearly an unsettled question under Tennessee law. A federal court faced with a novel or unsettled issue of state law may certify a question to the highest court of the state for resolution of the issue. *See Elkins v. Moreno*, 435 U.S. 647, 662 (1978). If the federal court does not certify a question, it is charged with deciding the case by discerning from all available sources how the Tennessee courts would decide the unresolved issue of law. *See CBL*, 2006 WL 2087625, at *6 (citing *McCLain v. NorthWest Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 328 (6th Cir. 2006)). Here, the Court is in the unique position of having the discretion to decide whether to exercise jurisdiction in this case because it is an action for a declaratory judgment. Thus, it can remand the case back to the state court system rather than certify a question or attempt to determine how Tennessee

13

courts would decide the issue. Accordingly, for all of the reasons discussed in the five-factor declaratory judgment analysis in Part II.A., and in light of the issue of law being expressly unresolved by the Tennessee courts, the Court will decline to exercise jurisdiction over this declaratory judgment action.

**III. Conclusion**

For the reasons just discussed, the Court finds that it is not appropriate to exercise jurisdiction under the Declaratory Judgment Act in this case. Therefore, the Declaratory Action is hereby **REMANDED** to the Chancery Court for Knox County, Tennessee, where it was originally filed.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE